UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CAMERON A. WHITE**                                                                     **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO. 4:23-CV-P130-JHM**

**TERRY NUNLEY** *et al.*                                              **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. Defendants Muhlenberg County and David Crockett filed a motion for summary judgment (DN 71). Plaintiff Cameron A. White filed a response (DN 76), and Defendants filed a reply (DN 79). This matter is ripe for decision.

**I.**

Plaintiff initiated this action when he was incarcerated as a convicted prisoner at Muhlenberg County Detention Center (MCDC). Upon initial review of this action pursuant to 28 U.S.C. § 1915A, the Court allowed an Eighth Amendment excessive-force claim to proceed against MCDC Deputy Jailer David Crockett in his individual capacity (DN 11) and a related failure-to-train claim to proceed against Muhlenberg County (DN 29).

**II.**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Factual differences

are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id*. at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Title 28 U.S.C. § 1746 permits a document signed and dated under penalty of perjury to be used instead of a sworn declaration or affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("[A] verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment.") (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). "Assertions made in a response signed and dated under penalty of perjury can therefore create genuine issues of material fact sufficient to defeat a motion for summary judgment." *Maxum Indem. Co. v. Broken Spoke Bar & Grill, LLC,* 420 F. Supp. 3d 617, 631-32 (W.D. Ky. Sept. 27, 2019). Additionally, when video evidence is available, the facts must be viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

### III.

In ruling upon the summary-judgment motion now before the Court, the Court will consider the following evidence presented by the parties.

#### A. Verified Complaint

In the verified complaint (DN 1), Plaintiff avers that on March 22, 2023, he tried to commit suicide when:

> [C/O David Crockett] came to my cell . . . . I was tased soon as the door opened and this is while I had a bag over my head and a sheet around my neck. He put his knee in my back squeezing handcuffs tighter and tighter trying to break my arm. I wasn't being incompliant, I wasn't even fighting him. He used excessive-force for no reason . . . [He] was rough on the way up on the hallway. He kept squeezing the handcuffs. I was yelling your hurting me. [] Crockett didn't care about the pain he was causing me he continued to hurt me. . . . I don't understand why he was beating me up for taking my own life . . . . My wrist is swallon because of his actions and he left bruises, all because I was having a mental break down.

(DN 1, PageID #:4-5).[1]

#### B. Video Footage

The first video submitted by Defendants is from a surveillance camera inside of Plaintiff's cell. (DN 71-1). It shows Plaintiff make a noose from a sheet and hang it from his cell door. It then shows Plaintiff place a plastic bag over his head, put the noose around his neck, and then squat down with his back against the cell door. The cell door is then opened and Plaintiff's upper

---

[1] In the verified complaint, Plaintiff also avers that he heard one of the officers involved in the incident tell Defendant Crockett that there was no reason to tase Plaintiff or to be so "rough on [him] on the way up the hallway." (*Id.* PageID #:5). Although, as set forth above, statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment, affidavit statements must be based on personal knowledge. *See* Fed. R. Civ. P. 56(e) (affidavits opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). A party opposing a motion for summary judgment cannot use hearsay evidence to create a genuine issue of material fact. *See Weberg v. Franks*, 229 F.3d 514, 526 n.3 (6th Cir. 2000) (disregarding allegations made in a verified complaint on the grounds that they were based on hearsay rather than personal knowledge); *see also Hurick v. McKee*, No. 17-1396, 2018 U.S. App. LEXIS 11154, at *8 (6th Cir. Apr. 30, 2018) (holding that conversations the plaintiff claimed to have overheard in his affidavit were inadmissible hearsay). However, even if the Court considered the statement allegedly made by the other officer, it would not change the Court's conclusion herein that no reasonably jury could find that Defendant Crockett acted with malevolent intent.

body falls into the hallway and is no longer in view of this camera. The video, however, does show an officer, presumably Defendant Crockett, placing his knee on Plaintiff's backside for approximately fifteen seconds.

The next video footage is taken from a surveillance camera in the hallway outside of Plaintiff's cell. (DN 71-2). It show three officers rush to Plaintiff's cell and one officer, presumably Defendant Crockett, pull his taser. When the officers open the door, it is evident that Plaintiff falls to the ground. The video does not show Plaintiff being tasered or the manner in which Plaintiff is handcuffed because his cell door is blocking the camera. However, the video does show one of the officers removing the plastic bag from Plaintiff's head. The video also establishes that it took the officers less than thirty seconds from the time they opened the door to have Plaintiff secured in handcuffs and on his feet in full view of the camera. The remainder of video shows Plaintiff being escorted down a hallway in handcuffs. It does not show any officer being rough with Plaintiff at this time.

The third video submitted by Defendants is taken from another surveillance camera and shows Plaintiff being escorted from the hallway into the booking area at the jail while handcuffed. (DN 71-4). The video does not show the officers escorting Plaintiff being rough with him. Plaintiff does not appear to be in any pain in this video.

The final video submitted by Defendants is from a surveillance camera which shows the officers securing Plaintiff in a restraint chair. (DN 71-5). The video does not show the officers being rough in any way or Plaintiff acting as if he is in any pain.

### C. Defendant Crockett's Affidavit

In his affidavit, Defendant Crockett states in relevant part:

> 2. On March 22, 2023, I intervened to stop [Plaintiff] from committing suicide.

4

> 3. [Plaintiff] had attempted to commit suicide via suffocation and strangulation by placing a garbage bag over his head, which was then secured by a makeshift noose made from his bedsheet and hung over the top of his cell door.
>
> 4. When I opened [Plaintiff]'s cell door, thus eliminating the threat of the attempted hanging, I observed that [Plaintiff] was still at risk of self-harm via the garbage bag tied to his head.
>
> 5. Because [Plaintiff] resisted the intervention efforts of MCDC staff and continued to suffocate from the bag on his head, I attempted to deploy my taser to subdue him.
>
> 6. When my taser deployment did not work, I engaged in "soft empty hands techniques to effectuate a Mechanical Advantage Control Hold ("M.A.C.H.") to pin [Plaintiff] on his stomach for handcuffing in order to both protect him from harm and force him to the ground.
>
> ….
>
> 8. After gaining control of [Plaintiff] and removing the bag and noose from his head/neck, [another officer] and I escorted [Plaintiff] to booking for further assessment.
>
> ….
>
> 9. I had no intention to maliciously or sadistically cause harm to Plaintiff in deploying my taser, handcuffing him, and/or using physical means to effectuate his subdual.
>
> . . . .

(DN 71-8, PageID #:437-38).

### D. MCDC Incident Reports

In support of their motion, Defendants also present the incident reports that were completed by the three officers involved in the use-of-force incident (DN 71-3). Therein, all of the officers indicate that they responded to Plaintiff's cell after another inmate shouted that Plaintiff "was hanging himself." In Officer Dickinson's report, he states:

> Once opening the cell [Plaintiff] fell to the ground with a plastic bag over his face and bottom part of a sheet wrapped tightly around his neck. . . . Deputy Crockett

5

> unsuccessfully deployed his taser in an attempt to incapacitate [Plaintiff] as to remove the sheet and bag from his neck without resistance. After the failed attempt the cartridge was removed and both Deputy McPherson and I held tasers in [Plaintiff]'s back without activating them while the bag and the sheet were removed from his head and [Plaintiff] was placed in handcuffs. Once restrained [Plaintiff] was escorted to booking and placed in the restraint chair without incident and placed in [a cell] while triage was called after being evaluated by [ a nurse].

(*Id.*, PageID #:409). Officer McPherson's report is similar to Officer Dickinson's. (*Id.*, PageID #:410).

### E. Other Evidence Submitted by Plaintiff

In support of his response, Plaintiff submitted the grievance he filed concerning the use-of-force incident, an undated and unsigned copy of what appears to be an investigative report pertaining to the incident, a copy of the complaint, and what appear to be documents from Defendant Crockett's personnel file. (DN 77-1). In what appears to be an investigative report, the author states that a nurse had advised him that Plaintiff had reported that he had arm, wrist, and back pain after the incident and that he was prescribed ibuprofen for the pain. (DN 77-1, PageID #:577).

The documents submitted by Plaintiff also include some medical records. One record shows that on September 9, 2024, approximately eighteen months after the use-of-force incident, Plaintiff went to an emergency room for elbow pain and that x-rays were taken on that date. (*Id.*, PageID #:591). Another medical record shows that on December 5, 2024, both of Plaintiff's wrists and his right elbow were x-rayed, and he was prescribed 200 mg of celecoxib and 300 mg of gabapentin for "bilateral wrist pain, carpal tunnel syndrome, bilateral, and cubital tunnel syndrome on right." (*Id.*, PageID #:604-06 ). He also attaches a medical record which shows that after additional tests were run he was diagnosed with "mild carpal syndrome on the right side" on April 10, 2025. (*Id.*, PageID #:601). Plaintiff also attaches subsequent medical records and

6

handwritten notes about carpal tunnel syndrome, bilateral tunnel syndrome, and cubital tunnel syndrome.

Additionally, Plaintiff attaches a document which appears to show that an employee was terminated on June 20, 2023. (*Id*., PageID #:578). However, this document does not have an employee's name on it. In his response, Plaintiff indicates that this document shows that MCDC terminated Defendant Crockett's employment after the use-of-force incident.

### F. Other Evidence Submitted by Defendants

Defendants attach to their reply a Certification Form which shows that Deputy Crockett completed a training on how to use tasers on February 17, 2023. (DN 79-1, PageID #:636).

### IV.

### A. Defendant Crockett/Excessive Force

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The ban on cruel and unusual punishments prohibits the "'unnecessary and wanton infliction of pain'" on prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Sixth Circuit recently set forth the Eighth Amendment excessive-force standard as follows:

> What qualifies as the "unnecessary and wanton infliction of pain"? This requirement has objective and subjective components, both of which follow from the Eighth Amendment's text. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).

> . . . .
>
> As a subjective matter, the Court has held that prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care). *See [Hudson]* at 5-6; *cf. Wilson*, 501 U.S. at 302-03. The Court has instead described the "core judicial inquiry" in the use-of-force context as distinguishing between force used in a "good-faith effort to maintain or restore discipline" and force used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). **Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment**. *See Hudson*, 503 U.S. at 5-7. So even if an officer uses force because of an "unreasonable" belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment. *Whitley*, 475 U.S. at 324.

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023) (emphasis added). The court further explained:

> To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force? *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. More generally, we have added that, while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment. So we defer to their decisions and avoid "unreasonable post hoc judicial second-guessing" of their conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citation omitted); *see also Griffin*, 604 F.3d at 954.

*Id.* at 618.

For the purposes of this Memorandum Opinion and Order, the Court will assume that the evidence presented satisfies the objective component of Plaintiff's excessive-force claims. Thus, below, the Court will only consider whether a reasonable jury could conclude that the evidence presented satisfies the subjective component – that is whether a reasonable jury could find the evidence shows that Defendant Crockett acted maliciously and sadistically to inflict pain upon Plaintiff.

### 1. Use of Taser

In their motion for summary judgment, Defendants argue that Defendant Crockett's use of a taser was justified and proportional to the threat because the nature of threat – Plaintiff's attempt to commit suicide – was a grave emergency and one of the most critical situations correctional officers ever face. They point out that the evidence shows that even though the bedsheet noose around Plaintiff's neck was released when the responding officers opened Plaintiff's cell door, he still had a plastic bag on his head and was not secured when Defendant Crockett tasered Plaintiff. (DN 71-8, Defendant Crockett's Aff., PageID #:437-38; DN 71-1, Video; DN 71-2, Video). In response, Plaintiff himself admits that Defendant Crockett deployed his taser while Plaintiff was suffocating due to the plastic bag on his head. However, he argues that this is very the reason he should not have been tasered and that less force could have been used to stop his suicide.

The Court first observes that there is no evidence that the taser injured Plaintiff. Second, courts have consistently held that using force, including a taser, to prevent a prisoner's suicide is constitutional. *See*, *e.g.*, *Monaco v. Doe*, No. 2:22-cv-2888, 2024 U.S. Dist. LEXIS 116976, at *43-45 (S.D. Ohio July 2, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 151346 (S.D. Ohio, Aug. 22, 2024) (concluding that spraying a prisoner with one short burst of OC spray to prevent him from continuing to cut his wrists with a broken razor blade did not constitute excessive force because preventing self-harm is a "valid penological objective"); *Wenhold v. Smith*, No. 4:22-CV-01873, 2024 U.S. Dist. LEXIS 78188, at *6 (M.D. Pa. Apr. 30, 2024) (concluding use of taser did not amount to excessive force because "there was a clear and obvious need to use force: Wenhold had attempted to harm himself with a razor, was being escorted to medical and was "flipping out" and "resisting," was attempting to cause further self-harm by tightening his handcuffs, and was failing to respond to verbal orders); *Hedges v. Back*,

9

No. 5:20-CV-509-JMH-HAI, 2021 U.S. Dist. LEXIS 253594, at *5 (E.D. Ky. Dec. 10, 2021), *report and recommendation adopted*, No. 5:20-CV-509-JMH-HAI, 2022 U.S. Dist. LEXIS 29507 (E.D. Ky. Feb. 18, 2022) (finding no issue of material fact as to whether defendant-officers' use of taser and restraints was excessive under the less-strict Fourteenth Amendment/*Brawner* standard where plaintiff-detainee threatened self-harm).

Moreover, although a lesser use of force may have been preferable, because prison officials "'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' we must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2022) (quoting *Hudson*, 503 U.S. at 6); *see also Moore v. Hunter*, 847 F. App'x 694 (11th Cir. Mar. 2, 2021) (holding that the use of pepper spray to prevent a suicide does not violate the Eighth Amendment "even if a more restrained response might have been preferable.") (citing *Wilkins*, 559 U.S. at 37-38).

Thus, upon review of all of the undisputed evidence and relevant case law, the Court concludes that no reasonable jury could conclude that Defendant Crockett acted maliciously and sadistically to inflict pain upon Plaintiff when he tasered Plaintiff in an attempt to end an extremely dangerous situation – Plaintiff's attempt to commit suicide.

### 2. Overtightened Handcuffs/Roughness

The Court next turns to Plaintiff's claim that Defendant Crockett used excessive force against him when he overtightened Plaintiff's handcuffs and was unnecessarily rough with Plaintiff when he escorted Plaintiff to the restraint chair.

The Court first considers the case law and evidence concerning the extent of any injuries Defendant Crockett may have caused Plaintiff with regard to this claim. In *Sootsman*, the Sixth Circuit held as follows:

> Although Eighth Amendment does not require a prisoner to suffer a "serious injury," the "absence" of such an injury goes a long way to disprove any claim that an officer used force with the required intent to harm. *Hudson*, 503 U.S. at 7-8. We have thus denied a prisoner's Eighth Amendment claim when an officer's use of force caused the prisoner to suffer "only some tenderness, bruising, and slight swelling," *Bullocks v. Hale*, [No. 20-34282021], U.S. App. LEXIS 5987, at *6 (6th Cir. Mar. 1, 2021), or "minor lacerations and cuts," *Lockett [v. Suardini]*, 526 F.3d [875], 876 [(6th Cir. 2008)]; *see also Richmond v. Settles*, 450 F. App'x 448, 453-54 (6th Cir. 2011).

79 F.4th at 618-19.

As set forth above, in the verified complaint, Plaintiff avers that Defendant Crockett's overtightening of his handcuffs and unnecessary roughness after he was handcuffed caused him both bruising and swelling. (DN 1, Verified Compl., PageID #:5). And, in what appears to be an investigative report of the incident written after Plaintiff filed a grievance, the author states that a nurse had advised him that Plaintiff reported that he had arm, wrist, and back pain after the incident and that he was prescribed ibuprofen for that pain. (DN 77-1, PageID #:577). Under the standard above, these injuries are not sufficiently serious "to prove [Defendant Crockett]'s malevolent intent." *Sootsman*, 79 F.4th at 618.

Moreover, although Plaintiff has presented evidence that he was eventually diagnosed with bilateral wrist pain, carpal tunnel syndrome, bilateral, and cubital tunnel syndrome and received medication for these conditions, (*Id.*, PageID #:604-06), there is no evidence that he sought any medical treatment of pain or injury - beyond receiving ibuprofen immediately after the use-of-force incident - until eighteen months later, when he went to an emergency room for elbow pain on September 9, 2024. (DN 77-1, PageID #:591). And although the diagnoses Plaintiff received

11

after seeking medical treatment are serious, Plaintiff has failed to present any evidence which shows that Defendant Crockett's overtightening of his handcuffs and "roughness" caused them. *See Jones v. Lawry*, No. 2:19-cv-00049, 2022 U.S. Dist. LEXIS 51071 (W.D. Mich. Jan. 19, 2022) ("Without any verifying evidence regarding the cause of Jones's injuries . . . , Jones fails to show a genuine issue of fact regarding the seriousness of his injuries.").

Nonetheless, even if a reasonable jury could find that Defendant Crockett's handcuffing of Plaintiff caused him to suffer from the above diagnoses, the Court concludes, in light of the video evidence, that no reasonable jury could find that Defendant Crocket acted maliciously or with the intent to cause harm while Plaintiff was handcuffed. In the verified complaint, Plaintiff states that Defendant Crockett squeezed Plaintiff's handcuffs "tighter and tighter . . . to try to break his arm" and that Defendant Crockett "was rough on the way up on the hallway." (DN 1, PageID #:4). Although the video evidence does not show when Plaintiff was first handcuffed by Deputy Crockett because Plaintiff's cell door obscures almost all of Plaintiff's body and Defendant Crockett's actions at that time, the actions that can be seen in the video contradict Plaintiff's averments. As stated above, when video evidence is available, the facts must be viewed "in the light depicted by the videotape." *Scott*, 550 U.S. at 381. Here, the video evidence shows that it took the officers less than thirty seconds to stop Plaintiff's suicide attempt and to have him upright and secured in handcuffs. *See* DN 71-2, 4, & 5. The video footage also shows Plaintiff being escorted down a hallway in handcuffs and placed in a restraint chair. *Id*. However, *none* of the viewable footage shows any officer being unnecessarily rough with Plaintiff at any time or acting unprofessionally in any way. Moreover, nothing in the video evidence indicates that that Plaintiff was in any pain during or immediately after the use-of-force incident. *Id*. And although the view of Plaintiff's actual handcuffing is obscured by a door in the pertinent video, the Court concludes

12

that a reasonably jury could not find that Defendant Crockett's manner and approach to the situation changed that drastically during that unseen thirty-second interval.

In sum, the Court concludes that Defendants are entitled to summary judgment because the video evidence shows that Defendant Crockett faced a serious threat - Plaintiff's suicide attempt, that he had to "make quick decisions in the heat of the moment," *Sootsman*, 79 F.4th at 618, and that although he may have responded negligently, or even recklessly, he did not act "maliciously or sadistically" with the intent to cause harm to Plaintiff. *Id*. at 616 (quoting *Hudson*, 503 U.S. at 7).

### B. Muhlenberg County/Failure to Train

Finally, the Court turns to Plaintiff's failure-to-train claim against Muhlenberg County. "A municipality or county 'can only be held liable if there is a showing of an underlying constitutional violation by' its officials." *M.J. v. Akron City Sch. Dist. Bd. of Ed.*, 1 F.4th 436, 452 (6th Cir. 2021) (quoting *Andrews v. Wayne Cnty.* 957 F.3d 714, 725 (6th Cir. 2020)); *see also Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. Jan. 15, 2020) (affirming the district's court dismissal of a failure-to-train claim against a county as matter of law because the district court found that the plaintiff had failed to present evidence of a constitutional violation by the individual defendants); *see also Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015) ("Baynes failed to present facts upon which a reasonable juror could conclude that the individual defendants' conduct constituted deliberate indifference to a serious medical need under the Eighth Amendment. Without an underlying unconstitutional act, Baynes' claim against the County under § 1983 must also fail.").

Thus, because the Court has concluded that no reasonable jury could find that Defendant Crockett, the only other defendant in this action, violated Plaintiff's Eighth Amendment rights by

13

using excessive force against him, Muhlenberg County is entitled to summary judgment on this claim as a matter of law.

## V.

For these reasons, and being otherwise sufficiently advised, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 71) is **GRANTED**.

Date: June 2, 2025

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Counsel of Record
4414.014

14